UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDISON CAIZA AUCATOMA, *et al.*,

Petitioners,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-1253-SKV

ORDER GRANTING IN PART WRIT
OF HABEAS CORPUS

Petitioners are currently detained by U.S. Immigration and Customs Enforcement

("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. They

jointly filed this 28 U.S.C. § 2241 habeas action through counsel to obtain release from

immigration detention, arguing their respective re-detentions after having been released into the

United States violate their due process rights under the Fifth Amendment.[1]  *See generally* Dkt. 1.

---

[1] Habeas petitions must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242.  Local Civil Rule 100(e) instructs that, "[i]f a petition or motion is not made and verified by the party in custody, the person making such petition or motion shall verify the same on behalf of such party in custody, and shall set forth therein the reason why it is not made and verified by the party in custody, and shall state he or she knows the facts set forth therein, or if upon information and belief, the sources of his or her information shall be stated." Local Rules W.D. Wash. LCR 100(e).  The instant Petition does not contain a verification.  *See* Dkt. 1.  Respondents do not challenge the petition as unverified or otherwise dispute any of the factual allegations contained in the petition or the accompanying sworn declarations filed in support by Petitioners. *See generally* Dkt 9.  Because the operative facts are presented in sworn declarations from Petitioners, the Court accepts the petition.  Counsel are advised to strictly adhere to all requirements of Local Civil Rule 100(e) moving forward.

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 1

Petitioners also seek permanent injunctive relief related to any future re-detention. *Id.* Petitioners filed sworn declarations in support. *See* Dkts. 2-4. Government Respondents filed a timely return (Dkt. 9), along with a sworn declaration from U.S. Department of Homeland Security Deportation Officer Rita Soraghan (Dkt. 10) ("Soraghan Decl."), and an unsworn declaration from their counsel Michelle Lambert (Dkt. 11) ("Lambert Decl."). Petitioners filed a timely traverse (Dkt. 12) in reply on May 1, 2026.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court GRANTS in part the petition (Dkt. 1) and ORDERS that Petitioners be released from detention within twenty-four (24) hours. Remaining requests for relief are addressed below.

## I.      BACKGROUND

The facts specific to each Petitioner are set forth below. The facts common to all Petitioners are that they are noncitizens who were previously detained and released from immigration custody and, after living in the United States for significant periods of time, were re-detained by immigration officials without notice or an opportunity to be heard on the reasons for their re-detention. *See generally* Dkts. 2-4.

### A. **Petitioner Edison Caiza Aucatoma**

Edison Caiza Aucatoma is a citizen of Ecuador, who entered the United States as a minor with his mother near Eagle Pass, Texas on August 10, 2023. Dkt. 2 ("Caiza Aucatoma Decl."), ¶¶ 1-2; Soraghan Decl., ¶ 4. He asserts he left Ecuador because he faced discrimination based on his indigenous identity. Caiza Aucatoma Decl., ¶ 1. On August 13,[2] 2023, he was served with a

---

[2] Soraghan states the Notice to Appear was issued on August 28, 2023. *See* Soraghan Decl., ¶ 6. The copy provided by Respondents is dated August 13, 2023, and the Certificate of Services has a service date of August 13, 2023, as well. *See* Lambert Decl., ¶ 2, Ex. A at 2-3.

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 2

Notice to Appear ("NTA"), charging him with removability pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i).[3]  Soraghan Decl., ¶ 6; Lambert Decl., ¶ 2, Ex. A.  He was released from custody the same day pursuant to an Order of Release on Recognizance ("OREC") issued "[i]n accordance with section 236[4] of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations[.]"  Soraghan Decl., ¶ 5; Lambert Decl., ¶ 2, Ex. B.

Following release, Caiza Aucatoma and his mother settled in New Jersey.  Caiza Aucatoma Decl., ¶¶ 3-6.  They both filed asylum applications in July 2024 and received Employment Authorization Documents (EADs) in March 2025.  Id., ¶ 9.  On November 5, 2025, while accompanying his mother to her ICE appointment in Newark, Caiza Aucatoma was told by ICE that he would also have to begin reporting now that he was an adult.  Id., ¶ 8.  ICE scheduled his first check-in for November 5, 2026.  Id.

The circumstances of Caiza Aucatoma's arrest and current re-detention come primarily from his declaration, as Respondents provide little detail apart from their acknowledgment that he was "encountered" during a "targeted enforcement operation in Irvington, New Jersey."  Dkt. 9 at 5; Lambert Decl., ¶ 2, Ex. C at 3.  Caiza Aucatoma asserts that on January 17, 2026, he was arrested on his way to work after a vehicle he was riding in was stopped by two unmarked cars.  Caiza Aucatoma Decl., ¶ 15.  Multiple agents surrounded the vehicle and started speaking with the driver before moving on to the passengers.  Id.  An officer requested his identification and scanned his face.  Id.  He was removed from the car, handcuffed, and placed into a van "for about an hour."  Id., ¶¶ 15-16.  Afterwards, he and the others who were detained were taken to an

---

[3] INA § 212(a)(6)(A)(i) is codified under 8 U.S.C. § 1182(a)(6)(A)(i) and provides:
"An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

[4] INA § 236 is codified under 8 U.S.C. § 1226.

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 3

office, where he was fingerprinted. *Id.* He was not told why he had been arrested or given a chance to explain or ask questions. *Id.* He was chained by his hands and feet and transferred to a detention center in Newark. *Id.*; *see* Soraghan Decl., ¶ 7. From New Jersey, he was transferred to a facility in Arizona for a few days before eventually being transferred to the NWIPC on February 5, 2026. Caiza Aucatoma Decl., ¶ 16. He has been detained at the NWIPC since. *Id.*, ¶ 17.

Caiza Aucatoma had an immigration merits hearing scheduled for May 1, 2026. *Id.*; Soraghan Decl., ¶ 10. Respondents do not allege that Caiza Aucatoma violated his conditions of release or otherwise explain why he was arrested and re-detained. *See* Dkt. 9 at 5. Caiza Aucatoma's August 2023 OREC has not been revoked. *See* Lambert Decl., ¶ 2, Ex. B at 2. Caiza Aucatoma asserts he has never missed an ICE appointment, has never been arrested, and has no criminal history. Caiza Aucatoma Decl., ¶¶ 11, 14.

### B. Petitioner Joe Kayumba

Petitioner Joe Kayumba is a citizen of the Democratic Republic of Congo ("DRC") who entered the United States near San Ysidro, California on September 1, 2023. Kayumba Decl., ¶¶ 1-2; Soraghan Decl., ¶ 13. He asserts he fled over fear of being killed in his country for identifying as part of the LGBTQ+ community. Kayumba Decl., ¶ 1. He was detained and released the same day on an OREC with reporting conditions that was issued "[i]n accordance with section 236 of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations[.]" Soraghan Decl., ¶ 13; Lambert Decl., ¶ 3, Ex. F. The OREC contains a requirement that Kayumba report in person "as indicated on the attached OREC G-56."[5] Lambert Decl., ¶ 3, Ex. F.

---

[5] The referenced OREC G-56 form is not in the record.

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 4

On September 1, 2023, Kayumba was issued an NTA, charging him with removability pursuant to INA § 212(a)(6)(A)(i).  Soraghan Decl., ¶ 15; Lambert Decl., ¶ 3, Ex. E.  The NTA orders him to appear before an immigration judge in Seattle on October 1, 2026.  Lambert Decl., ¶ 3, Ex. E.  Kayumba moved to Washington, checked in at the Tukwila ICE Field Office as required, and was given a new check-in date.  Kayumba Decl., ¶ 2.  He attended similar appointments between 2023 and 2025.  *Id.*

While released, Kayumba filed for asylum and obtained EADs that are valid through 2030.  *Id.*, ¶ 3.  Before his arrest, he had settled in Fife, Washington with his fiancé.  *Id.*, ¶ 4.

Respondents assert Kayumba "violated the reporting conditions of his OREC" on October 6, 2025.  Soraghan Decl., ¶ 15.  Kayumba acknowledges he missed an ICE appointment on that day because of illness, but states he went to the Tukwila ICE Field Office the following month to explain, where he reported "without any issue" and was given another check-in date for December 15, 2025.  Kayumba Decl., ¶ 5.

On December 15, 2025, Kayumba arrived approximately one hour late to his appointment and was taken into custody.  *Id.*, ¶ 6.  Kayumba asserts he tried to explain the reason he was late but was "immediately re-detained and not allowed to explain."  *Id.*  He was served with a Warrant for Arrest of Alien (Form I-200) that was "authorized pursuant to sections 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations[.]"  Lambert Decl., ¶ 3, Ex. H.  A "Notice of Custody Determination" (Form I-286) issued the same day indicates that DHS determined that Kayumba would be detained "[p]ursuant to the authority contained in section 236 of the [INA] and part 236 of title 8, [CFR][.]"  *See id.*, Ex. I.  He was transferred to the NWIPC, where he has been detained since.  Kayumba Decl., ¶ 8; Soraghan Decl., ¶ 16.

Kayumba's 2023 OREC shows it was cancelled on December 15, 2025, due to an alleged failure to comply with his conditions of release.  Lambert Decl., ¶ 3, Ex. H.  Other than alleging Kayumba "violated the reporting conditions of his OREC" (*see* Soraghan Decl., ¶ 15), Respondents do not explain what conduct violated which condition.  *See* Dkt. 9 at 5-6.

On March 11, 2026, an immigration judge denied Kayumba's asylum case and issued a final order of removal to Uganda.[6]  Soraghan Decl., ¶ 17; Kayumba Decl., ¶ 9.  On April 9, 2026, Kayumba appealed the order of removal to the Board of Immigration Appeals ("BIA").  Soraghan Decl., ¶ 17.  As of April 28, 2026, that appeal is still pending.  *Id.*

Kayumba has no criminal history.  Kayumba Decl., ¶ 7.

### C.  Petitioner Edwin Morales-Tunubala

Edwin Morales-Tunubala is a native and citizen of Colombia, who entered the United States near Del North, Texas on September 9, 2022.  Morales-Tunubala Decl., ¶¶ 1-2; Soraghan Decl., ¶¶ 18-19.  He asserts he left Colombia due to fear of violence after "local guerilla movements" attempted to recruit him.  Morales-Tunubala Decl., ¶ 1.  He was released from custody on September 19, 2022,[7] and ordered to report to ICE once he arrived in Denver, Colorado.  *Id.*, ¶ 2; Soraghan Decl., ¶ 20.

On October 25, 2022, Morales-Tunubala reported to the ICE office in Denver and was issued an NTA, charging him with inadmissibility pursuant to INA § 212(a)(6)(A)(i).  Soraghan Decl., ¶ 21; Lambert Decl., ¶ 4, Ex. J at 2-4.  He was thereafter released on an OREC that

---

[6] Soraghan states that Kayumba was ordered to Uganda "pursuant to the Asylum Cooperative Agreement with Uganda."  *See* Soraghan Decl., ¶ 17.  The immigration judge's order of removal is not in the record, and the remaining record is otherwise silent regarding any ties Kayumba may have with Uganda.

[7] Morales-Tunubala asserts he was released "on an alternative to detention order."  Morales-Tunubala Decl., ¶ 2.  Soraghan states that Morales-Tunubala was released "pursuant to conditional parole."  *See* Soraghan Decl., ¶ 20.  Nothing in Morales-Tunubala's administrative record provided by Respondents supports either assertion or resolves the discrepancy.

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 6

required him to periodically report to ICE and enroll in the Alternatives to Detention ("ATD") Program. Soraghan Decl., ¶ 21.[8]

Following his release, Morales-Tunubala reported to his local ICE office in Denver, as required. Morales-Tunubala Decl., ¶ 3. He was registered for the Intensive Supervision Appearance Program ("ISAP"), which required him to submit photos through a mobile application, attend monthly home visits, and report to ICE every month. *Id.* He also filed for asylum. *Id.*, ¶ 5.

On June 16, 2025, Morales-Tunubala was arrested after he showed up for a scheduled ICE appointment. Morales-Tunubala Decl., ¶ 7; Soraghan Decl., ¶ 24. He asserts that, before his appointment, he was informed by an immigration officer that he needed to bring his passport to his appointment and that his ankle monitor would be removed. Morales-Tunubala Decl., ¶ 7. Instead, after he checked in, he was detained. *Id.* Morales-Tunubala states he has never missed any home visits or office appointments and that officials did not provide a reason for his re-detention on June 16, 2025. *Id.*, ¶¶ 6-7. Respondents suggest that Morales-Tunubala was "arrested after several ATD violations," but do not offer further detail. Soraghan Decl., ¶ 24; *see* Dkt. 9 at 6.

On July 7, 2025, an immigration judge denied Morales-Tunubala's request for bond. Soraghan Decl., ¶ 26. On July 17, 2025, Morales-Tunubala was transferred to the NWIPC where he has been detained since. *Id.*, ¶ 27; Morales-Tunubala Decl., ¶ 7.

---

[8] Soraghan asserts that the October 25, 2022, OREC included the conditions that Morales-Tunubala report to ICE and enroll in the ATD Program. Soraghan Decl., ¶ 21. Respondents provided a copy of that OREC as part of Morales-Tunubala's administrative records (*see* Lambert Decl., ¶ 4, Ex. K), but neither the reporting requirement, nor the ATD enrollment condition are selected on the form. *See id.* at 2.

ORDER GRANTING IN PART WRIT OF HABEAS CORPUS - 7

On September 11, 2025, an immigration judge denied Morales-Tunubala's asylum claim but granted voluntary departure.[9]  Morales-Tunubala Decl., ¶ 8; Soraghan Decl., ¶ 28.  He appealed the immigration judge's denial of asylum on October 13, 2025.  Morales-Tunubala Decl., ¶ 8; Soraghan Decl., ¶ 28.  As of April 28, 2026, his appeal is still pending.  Soraghan Decl., ¶ 28.

Morales-Tunubala has no criminal history.  Morales-Tunubala Decl., ¶ 9.

**D.    Petition for Relief**

On April 13, 2026, Petitioners jointly filed the instant petition for writ of habeas corpus seeking the following relief:

(1) A standard order[10] as provided by General Order No. 10-25 of this Court;

(2) A writ of Habeas Corpus ordering their release from custody;

(3) Injunctive relief prohibiting their re-detention during the pendency of their removal proceedings absent written notice and a hearing prior to re-detention where the Government must prove, by clear and convincing evidence, that each is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks;

(4) A return of personal property;

(5) A declaration that the re-detention of Petitioners while removal proceedings are ongoing without first providing an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment;

(6) Attorneys' fees and costs under the Equal Access to Justice Act; and

(7) Any other relief this Court deems just and proper.

Dkt. 1 at 22-23.

//

---

[9] *See* 8 U.S.C. § 1229(c).

[10] A scheduling Order directing Respondents to show cause why Petitioners' Writ of Habeas Corpus should not be granted was issued by this Court on April 14, 2026.  *See* Dkt. 5.

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 8

## II.    LEGAL STANDARDS

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026).  "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and may dispose of habeas matters "as law and justice require," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); 28 U.S.C. § 2243.

## III.    DISCUSSION

Petitioners argue that Respondents violated their due process rights under the Fifth Amendment when they re-detained them without first providing written notice and a pre-deprivation hearing before a neutral decisionmaker.  Dkt. 1, ¶¶ 83-85.  Respondents acknowledge that Petitioners did not receive pre-deprivation hearings, but argue "there is no such standard requirement" and that Petitioners are detained under 8 U.S.C. § 1225(b).  Dkt. 9 at 7, 1. Notably, Respondents also acknowledge that courts in this District have found petitioners who are similarly situated to those here were entitled to pre-deprivation hearings, and that, should this Court "apply the same reasoning as stated in [those cases], will likely find that Petitioners' re-detentions required notice and pre-deprivation hearings to comport with procedural due process." *Id.* at 7-8 (first citing *Reyes v. Hermosillo*, 2026 WL 507678, at *4 (W.D. Wash. Feb. 24, 2026); then citing *Sierra Soto v. Bondi*, 2026 WL 972731, at *6-7 (W.D. Wash. April 10, 2026); and then citing *Randhawa v. Noem*, 2026 WL 628299, at *3 (W.D. Wash. Mar. 6, 2026)).

Respondents express their general disagreement with those decisions, yet "incorporate" the "legal arguments [the government] presented in *Sierra Soto* and *Randhawa*" here.  *Id.* at 8. Respondents do not discuss the facts of those cases, identify the specific arguments advanced by

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 9

the government they wish to adopt here, or otherwise seek to distinguish those cases from the instant to avoid a similar result. *See id.* at 8.

### A.      Statutory Basis for Detention

Respondents argue that Petitioners are subject to mandatory detention under 8 U.S.C. § 1225(b). Dkt. 9 at 1. To draw that conclusion, they first provide an overview of various statutory detention schemes and a history of the Government's past practice related to conditional release. *Id.* at 2-5. They then rely on out-of-circuit authority to advance an argument that courts in this District consistently reject.[11] Petitioners, in contrast, frame their claims as purely constitutional; *i.e.*, that Respondents' conduct violates their Fifth Amendment right to due process. *See generally* Dkt. 1. Because Respondents argue that § 1225(b) authorizes Petitioners' detentions, the Court briefly discusses the relevant statutory detention schemes.

Detention of noncitizens is governed by §§ 235-36 of the INA, codified at 8 U.S.C. §§ 1225-26. Section 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). In *Jennings*, the Supreme Court drew a clear line between the two provisions: § 1225 "applies primarily to [noncitizens] seeking entry into the United States," while § 1226 governs "the process of arresting and detaining" noncitizens "already in the country." *Id.* at 287-88. Applicants for admission are generally subject to mandatory detention under § 1225(b) and may be released only on parole "for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287. The Ninth Circuit has also described § 1226

---

[11] Respondents' argument is that because Petitioners are "applicants for admission" as defined in 8 U.S.C. § 1225(a), they are therefore "seeking admission" within the meaning of 8 U.S.C. § 1225(b)(2)(A) and must be detained pending removal proceedings. *See* Dkt. 9 at 5 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026); *Avila v. Bondi*, 2026 WL 819258, at *3 (8th Cir. Mar. 25, 2026)). Courts in this District have consistently rejected this argument. *See, e.g.*, *Rodriguez v. Bostock,* 802 F. Supp. 3d 1297, 1308 (W.D. Wash. 2025).

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 10

as "provid[ing] the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Similarly, courts in this District have held that noncitizens already residing in the United States are subject to discretionary detention under Section 1226(a). *See, e.g., Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1335–36 (W.D. Wash. 2025).

Any argument that Petitioners are lawfully detained under § 1225(b) is refuted by the Government's prior treatment of them and the record. Petitioners entered the United States years ago and were quickly released from custody on ORECs. They remained on conditional release and were subsequently issued various documents expressly authorized by § 236 of the INA, which is codified under 8 U.S.C. § 1226. *See* Lambert Decl., ¶¶ 3-5, Exs. B, D, F, H, I, K, M, N. Respondents do not explain why § 1225(b) would require their mandatory detention years after being released into the United States, and after having been issued various documents authorized by § 236, which, again, is codified under § 1226(a).

In sum, Respondents' unsupported conclusion that Petitioners' re-detention is authorized under § 1225(b) is unavailing. So, although not expressly argued, to the extent Respondents rely on § 1225(b) to argue Petitioners' re-detentions comply with due process, the Court is unpersuaded. Further, "the fact that the Government may believe it has a valid reason to detain [a petitioner] does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025).

The Court now turns to Petitioners' Due Process claim.

//

//

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 11

**B.       Petitioners' Re-detentions Violate Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process requires meaningful notice and a genuine opportunity to be heard before the Government infringes on a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz*, 53 F.4th at 1206-07; *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

The parties acknowledge that courts in this District apply *Mathews* in cases involving claims of unconstitutional re-detention. *See* Dkt. 1 at 17; Dkt. 9 at 7. Petitioners argue that applying *Mathews* compels their release here. Dkt. 1, ¶¶ 70-74. Respondents acknowledge that applying *Mathews* is likely to favor all Petitioners. *See* Dkt. 9 at 7. Consistent with prior cases, this Court also deems the *Mathews* test applicable in the context of this re-detention case and will therefore address the three factors below.

1.       *Private Interest*

Petitioners have a constitutionally protected interest in their continued liberty. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. When Petitioners were released shortly after entering the United States, they acquired a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083,

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 12

1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1136.

Here, after briefly detaining Caiza Aucatoma and Kayumba in 2023 and Morales-Tunubala in 2022, ICE released them on ORECs. They spent the vast majority of their years in the United States released on these ORECs. Caiza Aucatoma finished high school, obtained employment, and planned on attending college. Caiza Aucatoma Decl., ¶ 12-13. Kayumba resumed his career as a professional athlete and became engaged. Kayumba Decl., ¶ 4. Morales-Tunubala settled in Denver with his wife and a community of friends. Morales-Tunubala Decl., ¶ 10. "[Noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Accordingly, the first *Mathews* factor weighs in Petitioners' favor.

### 2. *Risk of Erroneous Deprivation*

As to the second *Mathews* factor, the procedures used to re-detain Petitioners created a high risk of erroneous deprivation of their liberty. Again, Caiza Aucatoma had lived almost three years out of custody in the United States and abided by all conditions of his release. There is no evidence that he has ever violated a condition of his release and the operative OREC authorizing his conditional release has not been cancelled or revoked. Dkt. 9 at 5, 7 n.4; *see* Lambert Decl., ¶ 2, Ex. B at 2. His arrest and current re-detention only happened as a result of being "encountered" by ICE while riding as a passenger in a vehicle. Lambert Decl., ¶ 2, Ex. C at 3.

Respondents assert Kayumba violated the reporting conditions of his OREC, but they do not articulate how. *See* Soraghan Decl., ¶ 15. While Kayumba's OREC designates a reporting

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 13

requirement, the document which purportedly memorializes the specific requirement is not contained within the evidentiary record. Respondents provide no explanation for the missing document or otherwise provide the specific requirement. *See* Dkt. 9 at 6. The OREC alone provides nothing beyond the reporting requirement generally. *See* Lambert Decl., ¶ 3, Ex. F (designating a reporting requirement, but omitting the reporting location, name and title of reporting officer, day to report, and time to report). In addition, Soraghan does not attest to having personal knowledge of Kayumba's reporting requirement and nothing else offered by Respondents provides an explanation beyond a conclusory assertion that Kayumba has a "history of untimely reporting." Soraghan Decl., ¶ 15; Dkt. 9 at 6; Lambert Decl., ¶ 3, Ex. G at 3. At most, any evidence of Kayumba's alleged history of noncompliance comes from his own declaration, in which he acknowledges one missed check-in due to illness and another late arrival. *See* Kayumba Decl., ¶¶ 5-6. Without knowing the specific conditions or further explanation from Respondents, it remains unclear whether a violation occurred.

Finally, Respondents' vague allegation that Morales-Tunubala violated his OREC (*see* Dkt. 9 at 7) is similarly unsupported. Respondents assert Morales-Tunubala was "arrested after several ATD violations" (*see* Soraghan Decl., ¶ 24) but offer no further explanation. *See* Dkt. 9 at 6. Administrative records are equally unhelpful because, again, the OREC that *has* been provided expressly omits an ATD condition. *See* Lambert Decl., ¶ 4, Ex. K.

In sum, re-detaining Petitioners prior to providing them with a hearing—in which factual questions regarding their compliance with conditions of release could have been resolved—maximized the risk that their liberty interests would be erroneously deprived.

The second *Mathews* factor therefore weighs in Petitioners' favor.

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 14

3.    *Governmental Interest*

As to the third *Mathews* factor, the government's countervailing interest in detaining Petitioners prior to a hearing is minimal. Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690. While providing a hearing before re-detaining an individual would require expending resources (money and time), such costs are outweighed by the risk of erroneously depriving an individual of a significant liberty interest. *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Though requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing no pre-detention process is constitutionally deficient.

Here, there is no evidence that Petitioners posed a danger to the community or would have failed to appear at future hearings. Nor is there evidence that exigency made any pre-detention process impracticable. Caiza Aucatoma's re-detention was a result of an unplanned encounter with ICE and appears to be based solely on his immigration status. Kayumba and Morales-Tunubala were arrested after checking in for scheduled ICE appointments, which suggests their re-detentions were not urgent or based on serious violations of release. Given the liberty interest at stake and the high risk of erroneous deprivation, providing effectively no pre-detention process to Petitioners here was constitutionally deficient. *See Subham v. Noem*, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026).

In sum, the *Mathews* factors strongly favor Petitioners. Habeas relief is therefore warranted. Given the lack of lawful process at the outset of detention and the absence of exigent

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 15

circumstances, release is the appropriate and constitutionally required remedy.  This conclusion aligns with a broad consensus among district courts.  *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

### C.    Permanent Injunctive Relief[12]

Petitioners also request that Respondents be enjoined from re-detaining them during the pendency of removal proceedings and without providing written notice and a hearing prior to re-detention at which Respondents would bear the burden of proving by clear and convincing evidence that each Petitioner is a flight risk or danger to the community, and that no alternatives to detention would mitigate those risks.  *See* Dkt. 1 at 23.

Petitioners argue that Respondents have been on notice in this District since at least August 19, 2025, that re-detaining individuals who originally had been detained at the border and then released without notice and an opportunity to be heard violates the Fifth Amendment's Due Process Clause.  *Id.*, ¶ 8 (citing *Ortiz v. Hermosillo*, 2026 WL 607672, at *5 (W.D. Wash. 2026); *E.A. T.-B.*, 795 F. Supp. 3d at 1324).  Despite being on notice, Petitioners argue, Respondents' "ongoing and intentional failure to abide by the requirements of due process demonstrates that even if the Court orders Petitioners' release from their current unlawful detention, they face a significant likelihood of similar violation of their rights in the future."  *Id.*, ¶ 9.

---

[12] A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008).

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 16

To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). The record shows that each Petitioner was re-detained without constitutionally adequate process, but it does not establish a specific, real, and immediate threat that these same Petitioners will again be re-detained without process after they are released under this Order. The Ninth Circuit has held that a permanent injunction is appropriate where the party can demonstrate it is likely to suffer irreparable injury. *See City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018) ("An injunction is appropriate when the party seeking relief demonstrates that . . . it is likely to suffer irreparable injury that cannot be redressed by an award of damages[.]"). The Court declines to impute the circumstances of other habeas petitioners in this District to Petitioners here in order to demonstrate a threat or likelihood of recurrent harm. Petitioners' request for injunctive relief regarding possible future re-detention is therefore denied.

Petitioners also seek an order requiring Respondents to return any personal property belonging to Petitioners upon their release. Dkt. 1 at 23. The petition provides no factual development or legal authority specifically addressing personal property and whether the Court is authorized under § 2241 to order such relief. The Court has no independent reason to believe the NWIPC would unlawfully retain Petitioners' property. This request is therefore denied without prejudice.

Finally, Petitioners request that this Court "declare that the re-detention of Petitioners while removal proceedings are ongoing without first providing an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment." *Id*. at

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 17

23.  The Court has already found that the re-detentions violated Petitioners' due process rights under the Fifth Amendment.  To the extent Petitioners seek relief beyond that finding, such as declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Petitioners do not engage with the elements required for such relief or otherwise provide legal authority specifically addressing that relief.  To that end, Petitioners' request is denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part the habeas petition (Dkt. 1) and ORDERS that Petitioners be RELEASED from immigration detention within 24 hours on conditions consistent with those in place at the time of their re-detentions.  Respondents shall file a notice with the Court within 48 hours that Petitioners have been released.  Petitioners' remaining requests for injunctive relief are DENIED.  Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 8th day of May, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART WRIT OF HABEAS
CORPUS - 18